COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Benton and Petty
Argued at Richmond, Virginia


KATE ROSE TRENT

MEMORANDUM OPINION[*] BY
v.      Record No. 1777-06-2          JUDGE WILLIAM G. PETTY
APRIL 24, 2007

PRINCE EDWARD COUNTY
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Richard S. Blanton, Judge

Andrea C. Long (Boone, Beale, Cosby & Long, on brief), for
appellant.

Jody Holyst Fariss; Calvin S. Spencer, Jr., Guardian *ad litem* for the
minor child[1] (Jody Holyst Fariss, P.C.; Harris, Matthews & Crowder,
P.C., on brief), for appellee.


Kate Trent appeals the trial court's decision terminating her parental rights to

her daughter pursuant to Code § 16.1-283(B). On appeal, Trent contends the trial court erred in

terminating her parental rights (1) based upon a finding that the child was abused or neglected when

she was burned by a cigarette; and (2) after the Prince Edward County Department of Social

Services ("PDSS") failed to provide Trent with additional rehabilitative services once it determined

that the child was injured by a cigarette burn. Because we find no error in the trial court's rulings,

we affirm.

---

[*]Pursuant to Code § 17.1-413, this opinion is not designated for publication. Moreover, as this opinion has no precedential value, we recite only those facts necessary to our holding.

[1] Calvin S. Spencer, Jr., as Guardian *ad litem* for the minor child, filed a joint responsive brief with appellee.

## I. BACKGROUND

We view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Kate Trent gave birth to the child on August 23, 2002. Cumberland County DSS ("CDSS") originally removed the child from Trent's care on December 25, 2002, after the child suffered from Shaken Baby Syndrome while Trent's boyfriend James Clinton was babysitting her. Following an investigation, Trent agreed to have no contact with James Clinton. CDSS returned custody of the child to Trent on August 1, 2003, and rehabilitative services were provided to Trent, including counseling and assistance in obtaining Medicaid and other benefits.

On September 4, 2003, CDSS officials located Trent and the child with James Clinton in violation of the court order. The PDSS took the child into foster care where she has remained to date. Following the child's removal, Trent continued her involvement with Clinton. On one occasion, agency workers discovered Trent had taken the child to the jail to see Clinton.

While the child was in foster care, Trent continued to receive a number of rehabilitative services to address a broad range of issues. Through the Family Strides Program Trent received assistance with employment, housing, childcare, child development, and financial resources. Individual sessions were provided for Trent through the Northwest Center for Family Services to assist with improved decision-making skills and to address future planning and parenting matters.

Following a weekend visitation in August 2005, Trent returned her daughter to daycare with an injury to the back of her right wrist. A daycare worker immediately noticed the injury and

notified social services. Trent telephoned social services later that morning and acknowledged that the child had been under her exclusive care throughout the weekend. Trent explained that the child injured her wrist when she fell at a family outing and suffered a rug burn.

Dr. Hussien Al-Shammaa, the child's pediatrician, examined her later that morning and determined that a lit cigarette caused her injury. In reaching this conclusion he first relied upon the characteristics of the wound, which he described as a "small, round lesion, raised and crusted around the perimeter and deep in the center." Further, he stressed that no additional abrasions were apparent outside of the injury site and that the location of the child's injury is "consistent with abuse" and inconsistent with a rug burn. He explained that a rug burn is a superficial injury and would not have the characteristics shown here with a "round, raised crusted perimeter with a deeper center." He opined, that to a reasonable degree of medical certainty, the child's injury was a third-degree burn resulting from a lit cigarette and was not a rug burn.

Angie Redford, a nurse employed by Dr. Al-Shammaa, initially examined the child when she arrived at the physician's office for her appointment. Nurse Redford described the injury as the "size and shape of the tip of a cigarette." She detailed how the injury had a "raised crusted portion along the outer perimeter and a deeper central portion" that was "raw, red, you almost could see muscle tone." The child told Nurse Redford that her mother had burned her with a "cigga" and then the child took an unlit cigarette and placed it against her wrist to show how her mother had harmed her.

Dr. Laurie Shinn, an independent medical examiner and Board Certified Pediatric Dermatologist, examined the child at Trent's request, several months after the incident, on December 22, 2005. During the examination, the child told Dr. Shinn that "her mommy" burned her and caused the injury. Because of the passage of time, Dr. Shinn could not render an opinion concerning the cause of the injury; however, she agreed that the location of the injury was

inconsistent with a rug burn and agreed that it would be "a stretch" to conclude that the injury could have resulted from a rug burn. Moreover, she testified that the injury described by Dr. Al-Shammaa was consistent with a cigarette burn.

## II. ANALYSIS

Trent argues that the trial court erred in finding that the child was abused or neglected. Moreover, she contends that because PDSS failed to provide her with additional services after the child sustained the injury to her wrist, the trial court erred by terminating her parental rights to the child under Code § 16.1-283(B).

"'The termination of parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of the City of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). In deciding what is in the best interests of a child, we have stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

In determining whether sufficient facts support the trial court's decision to terminate Trent's parental rights under subsection (B), we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the

- 4 -

child's best interests.'" Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614

S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796

(1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be

disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 8, 614 S.E.2d

at 659 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463).

Under Code § 16.1-283(B), the parent of an abused or neglected child may have his or her

parental rights terminated if the court finds by clear and convincing evidence that termination is in

the best interests of the child and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

In the case before us, the evidence supports the trial court's conclusion that termination

of Trent's parental rights is in the child's best interests. At the time of the termination hearing,

the child was forty-six months old and had spent forty-one of those forty-six months in foster

care. At four months of age, the child suffered from Shaken Baby Syndrome and was first

removed from Trent's care. She was returned to Trent on the condition that Trent would have no

contact with Clinton. Seven months later in September 2003, social workers discovered Trent

and the child with Clinton. Trent's actions resulted in yet another foster care placement for the

child. Despite the child's removal, Trent maintained contact with Clinton and even took her to

the jail to visit Clinton while he was incarcerated. Later, Trent misled social workers about her

visit to the jail to see Clinton.

Following a weekend visitation in 2005, Trent returned her daughter with a third-degree burn, inflicted during the visitation period. Despite the provision of rehabilitative services over an extended period of months and ample time for Trent to demonstrate that she is capable of resuming responsibility in caring for the child, she has failed to do so. As we have observed, "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

Trent's actions provided the trial court with clear and convincing evidence that the "neglect or abuse" suffered by the child "presented a serious and substantial threat" to her life, health or development and made it "not reasonably likely" that the conditions which resulted in such neglect or abuse could be substantially corrected or eliminated so as to allow the child's safe return to Trent within "a reasonable period of time." Code § 16.1-283(B). With the evidence presented, the trial court reasonably concluded that the child's best interests would be served by the entry of the parental termination order.

Lastly, we address Trent's claim that the trial court erred in terminating her parental rights under Code § 16.1-283(B) because PDSS failed to provide her with additional rehabilitative services. The record demonstrates that over an extended period of time, Trent received numerous rehabilitative services tailored to remedy apparent deficiencies in Trent's parenting skills and decision-making abilities. These services included individual counseling sessions. Additionally, practical resources were made available to Trent to assist with housing, employment and future planning issues.

Moreover, "[n]othing in Code § 16.1-283 or the larger statutory scheme," requires that rehabilitative services "be provided in all cases as a prerequisite to termination under subsection B." Toms, 46 Va. App. at 268, 616 S.E.2d at 771. Further, subsection (B)(2) "does not create

- 6 -

specific timeframes" within which rehabilitative services must be provided to a parent, "nor does it mandate that a public or private agency provide any services to a parent after the child enters foster care." Id. at 269, 616 S.E.2d at 771 (internal quotation marks and citation omitted). Therefore, Trent was not entitled to receive additional services, and the trial court was only required to consider "whether rehabilitation services, if any, have been provided to a parent." Id. at 268, 616 S.E.2d at 771. In the case before us, the record supports the trial court's compliance with the statutory obligation.

III. CONCLUSION

Because sufficient evidence supports the trial court's findings of fact and no error of law undermines its judgment, we affirm the trial court's order terminating Trent's parental rights under Code § 16.1-283(B).

Affirmed.